United States District Court
Eastern District of Michigan

**Cynthia Lewis,**

     Plaintiff,

                         Civil No.

v.

                         Honorable
                         Mag. Judge

**Hurley Health Services; City of Flint, Board of Hospital Managers d/b/a Hurley Medical Center and HMC; Keith B. Daniels, DPM; Hamilton Community Health Network, Inc. d/b/a Hamilton Community Health Network d/b/a Hamilton Community Health Network-Burton Medical Clinic,**
Jointly and Severally,

     Defendants.

---

# Notice of Removal

---

      Federal defendants, Hamilton Community Health Network, Inc., Hamilton Community Health Network-Burton Medical Clinic, and Dr. Keith Daniels, pursuant to 42 U.S.C. § 233(c), hereby remove this action (Genesee County Court Case No. 20-114071), which is now pending in Genesee County Circuit Court for the State of Michigan from that court to the United States District Court for the Eastern District of Michigan, Southern Division.

      This action is removable because the federal defendants at all times relevant to this matter, were employees of Hamilton Community Health Network, Inc.,

which has been deemed eligible for coverage under the Federally Supported Health Centers Assistance Act of 1992 (Public Law 102-501), 42 U.S.C. § 233(c). Accordingly, Hamilton Community Health Network, Inc. is an "entity" within the meaning of 42 U.S.C. § 233(g), and the federal defendants are employees of that entity within the meaning of 42 U.S.C. § 233(g), and therefore they are deemed to be employees of the United States Public Health Service covered by 42 U.S.C. § 233.  (Ex. 1 – Deeming Declaration and Letters).  Because they are deemed to be employees of the U.S. Public Health Service, defendants Hamilton Community Health Network, Inc., Hamilton Community Health Network-Burton Medical Clinic, and Dr. Keith Daniels are eligible for coverage under the FTCA pursuant to 42 U.S.C. § 233(a) and (g).  Under 42 U.S.C. § 233(a) and (g), a claim against the United States pursuant to the FTCA is the exclusive remedy available to the plaintiff in this case with respect to the alleged acts or omissions of the federal defendants.

This action is also removable because the Attorney General, through his designee, Peter Caplan, Chief of the Civil Division of the United States Attorney's Office for the Eastern District of Michigan, has certified that defendants Hamilton Community Health Network, Inc., Hamilton Community Health Network-Burton Medical Clinic, and Dr. Keith Daniels who have been deemed to be employees of the U.S. Public Health Service, were acting within the scope of their employment

2

at the time of the incident out of which this suit arose.  (Ex. 2 – Certificate of

Scope of Employment).

This removal is timely because an action may be removed under 42 U.S.C.

233(c) ". . . at any time before trial . . . ."  A copy of the complaint that plaintiff

filed in the Genesee County Circuit Court is attached.

Respectfully submitted,

**Matthew Schneider**
United States Attorney

*s/Zak Toomey*

**Zak Toomey** (MO61618)
Assistant U.S. Attorney
211 W. Fort St., Ste. 2001
Detroit, MI  48226
(313) 226-9617
zak.toomey@usdoj.gov

Date:  July 20, 2020

## **Certificate of Service**

I hereby certify that on July 20, 2020, I electronically filed the foregoing

paper with the Clerk of the Court using the ECF system, which will send

notification of such filing to the following:

n/a

I further certify that I have mailed by U.S. mail the foregoing paper to the

following non-ECF participants:

Clerk of Court
7th Judicial Circuit Court
Genesee County Court
900 Saginaw Street
Flint, MI 48502

Emily Peacock
Olsman Mackenzie Peacock & Wallace, PC
2684 West Eleven Mile Rd
Berkley, MI 28072

*s/Zak Toomey*

**Zak Toomey**
Assistant U.S. Attorney

STATE OF MICHIGAN

IN THE CIRCUIT COURT FOR THE COUNTY OF GENESEE

CYNTHIA LEWIS, ESQ.

     Plaintiff,

v

HURLEY HEALTH SERVICES; CITY OF
FLINT, BOARD OF HOSPITAL MANAGERS d/b/a
Hurley Medical Center and HMC;
KEITH B. DANIELS, DPM; HAMILTON
COMMUNITY HEALTH NETWORK, INC
d/b/a Hamilton Community Health Network
d/b/a Hamilton Community Health Network
-Burton Medical Clinic

     Defendants, Jointly and Severally,

**20 - 114071**

No. 20-     NH

Hon.

JOSEPH J. FARAH
P-30439



A TRUE COPY
Genesee County Clerk

EMILY M. PEACOCK (P64410)
OLSMAN MACKENZIE PEACOCK
& WALLACE, P.C.
Attorneys for Plaintiff
2684 West Eleven Mile Road
Berkley, MI 48072
248-591-2300 / 248-591-2304 [fax]

*There is no other pending or resolved civil
action arising out of the same transaction
or occurrence as alleged in this Complaint.*

*Emily M. Peacock*

Emily M. Peacock, Esq.

**COMPLAINT, JURY DEMAND AND AFFIDAVITS OF MERIT SIGNED BY R.
RANDAL AARANSON, DPM AND MARY FLANAGAN, R.N.**

NOW COMES the plaintiff Cynthia Lewis, Esq. by and through her attorneys, OLSMAN

MACKENZIE PEACOCK & WALLACE, PC, by EMILY M. PEACOCK, and does hereby

complain against the Defendants KEITH B. DANIELS, DPM; HAMILTON COMMUNITY

HEALTH NETWORK, INC D/B/A HAMILTON COMMUNITY HEALTH NETWORK D/B/A

HAMILTON COMMUNITY HEALTH NETWORK-BURTON CLINIC; HURLEY HEALTH

SERVICES; AND CITY OF FLINT, BOARD OF HOSPITAL MANAGERS D/B/A HURLEY

MEDICAL CENTER AND HMC in a civil action, stating unto this Court as follows:

1.      Plaintiff Cynthia Lewis, Esq. is a resident and citizen of the City of Clio, County of Genesee, State of MI.

2.      Defendant Hurley Health Services is a hospital which at all times relevant to this complaint was operating a facility in the City of Flint, County of Genesee, State of MI.

3.      Defendant City of Flint, Board of Hospital Managers d/b/a Hurley Medical Center and HMC is a hospital which at all times relevant to this complaint was operating a facility in the City of Flint, County of Genesee, State of MI.

4.      Defendant Hamilton Community Health Network, Inc d/b/a Hamilton Community Health Network d/b/a Hamilton Community Health Network-Burton Clinic is a medical facility which at all times relevant to this complaint was operating a facility in the City of Burton, County of Genesee, State of MI.

5.      Defendant Keith B. Daniels, DPM is a podiatrist who at all times relevant to this complaint was specializing in podiatric medicine and surgery and who at all times relevant to this complaint was providing services in the City of Flint, County of Genesee, State of MI.  Upon information and belief, at all times relevant to this complaint, Defendant Keith B. Daniels, DPM was an agent and/or employee of Hamilton Community Health Network, Inc d/b/a Hamilton Community Health Network d/b/a Hamilton Community Health Network-Burton Clinic, Hurley Health Services, and/or City of Flint, Board of Hospital Managers d/b/a Hurley Medical Center and HMC.

6.      The jurisdiction of this court is founded upon the parties hereto and the amount in controversy which exceeds Twenty-Five Thousand ($25,000.00) Dollars. Venue is premised upon the situs of the occurrence which is Genesee County.

7.      On June 27, 2017, Ms. Lewis presented to Hamilton Community Health Network – Clio Health Center for a new patient visit.

8.      At that visit Ms. Lewis indicated she had a history of a collapsed arch in her left foot. She further indicated she had tried orthotics and physical therapy without relief.  As a result, she was referred to Keith Daniels, DPM who is also associated with Hamilton Community Health Network.

9.      On July 21, 2017, Ms. Lewis was seen by Keith Daniels, DPM for a new patient podiatry visit.

10.     Her chief complaint was left foot pain.

11.     Dr. Daniels noted Ms. Lewis had severe pronation on the left with a deformity in her left mid-foot/hind-foot.

12.     Upon palpitation, Dr. Daniels noted tenderness in the left fore-foot and left hind-foot was present.

13.     It was Dr. Daniels' impression Ms. Lewis was suffering from a non-traumatic rupture of the tibialis posterior tendon, left and he wanted Ms. Lewis to follow up with an MRI of the left foot.

14.     He further instructed Ms. Lewis to follow up after the MRI to discuss treatment.

15.     On the same day, Ms. Lewis underwent a MRI of the left foot with and without contrast.

16.     The MRI found significant abnormalities with the left foot and the radiology report reflects that the findings were discussed with Keith Daniels, DPM on July 21, 2017 at 4:20 p.m.

17.     On August 4, 2017, Ms. Lewis was seen by Dr. Daniels to discuss her MRI results.

18.      At the visit Dr. Daniels diagnosed Ms. Lewis with re-occurrent dislocation of joint due to a posterior tibial tendon tear.

19.     He indicated Ms. Lewis should be scheduled for surgery at Hurley Hospital to correct the issues with her left foot.

20.     Notably, Dr. Daniels does not mention any issues with Ms. Lewis' right foot or any plans to perform surgery on the right foot.

21.     On September 22, 2017, a general surgery history and physical was completed by Marcos A. Vargas, P.A. which was co-signed by Dr. Daniels prior to Ms. Lewis' surgery.

22.     The history and physical reflects Ms. Lewis had chronic/re-occurrent dislocation of the left foot and the plan was a correction of her re-occurrent dislocation of the left foot with internal fixation.

23.     Also, on September 22nd, Ms. Lewis signed a consent form for surgery on her left foot.

24.     On September 23, 2017, Ms. Lewis presented to Hurley Hospital at 7:52 a.m. for surgery on her left foot.

25.     Flow sheets from the morning of surgery indicate Laurie Kneuss, R.N. verified the correct procedure was being performed; however, in terms of the correct site being marked, RN Kneuss indicated "N/A".

26.     The record further indicates at 9:25 a.m. someone with the initials of "DK" noted the correct procedure was being performed; however, with regard to the correct site the record indicates at 9:25 a.m. that "DK" had "no comment."

3

27.     At 10:30 a.m., Ms. Lewis was noted to be in the operating room with her case being completed at 10:58 a.m.

28.     Shortly, after completing the surgery, Dr. Daniels completed Version #1 of his Brief Operative Note, which does not reference which foot was operated on, but references a left implant being placed.

29.     After surgery, Diane Williams, R.N. went to put ice on Ms. Lewis' left foot and discovered Ms. Lewis had a dressing on her right foot only.

30.     The OR Charge Nurse notified Dr. Daniels the wrong foot had been operated on.

31.     At 1:58 p.m. Dr. Daniels attempted to cover up the mistake by authoring a self-serving progress note, in which he indicated surgery on both feet had been discussed in the office, and he preferred to do one foot at the time.

32.     He then indicated in his notes, "the right foot was accidentally done first. The foot was draped and scrubbed, and nobody noticed it was the right foot."

33.     Despite Dr. Daniels preference to operate on one foot at a time, he then offered to perform surgery on the correct foot.

34.     His progress note indicates consent was resigned for both.[1]

35.     The anesthesiologist was more straight forward in her note stating, "Surgery was performed on the wrong foot."

36.     Regardless, due to the mistake, Ms. Lewis was taken back to the operating room to have the surgery on the left foot, which was the correct intended foot.

37.     After completing the second surgery, Dr. Daniels completed version #2 of his Brief Operative Note in which he now added recurrent dislocation of joint "both feet" had been performed.

## COUNT 1
## HURLEY HEALTH SERVICES, AND CITY OF FLINT, BOARD OF HOSPITAL MANAGERS D/B/A HURLEY MEDICAL CENTER AND HMC

38.     Plaintiff incorporates by reference, as though fully stated herein, all of the allegations contained in the other paragraphs of this complaint.

39.     The Defendants Hurley Health Services, and/or City of Flint, Board of Hospital Managers d/b/a Hurley Medical Center and HMC, by and through their employees, agents, and/or ostensible agents, including but not limited to, RNs, LPNs and surgical scrub techs, owed a duty to Cynthia Lewis, Esq. to provide care in conformance with the skill and care ordinarily possessed and exercised by practitioners of their profession in the same or similar localities.

---

[1] The records received by Plaintiff's counsel do not contain a consent for surgery on the right foot.

40.     The Defendants Hurley Health Services, and/or City of Flint, Board of Hospital Managers d/b/a Hurley Medical Center and HMC, by and through their employees, agents, and/or ostensible agents, including but not limited to, RNs, LPNs and surgical scrub techs, further owed a duty to Cynthia Lewis, Esq. to exercise due care and caution.

41.     The employees, agents, and/or ostensible agents of Defendants Hurley Health Services, and/or City of Flint, Board of Hospital Managers d/b/a Hurley Medical Center and HMC including but not limited to, RNs, LPNs and surgical scrub techs breached this duty when they performed the following acts of ordinary negligence, professional negligence and/or medical malpractice:

a.      Negligently and recklessly failing to timely and appropriately ensure that surgery was performed solely on the correct and intended surgical site (left foot) and according to Ms. Lewis' signed surgical consent.

b.      Negligently and recklessly failing to refrain from allowing surgery on the incorrect and unintended site (right foot) for which Ms. Lewis did not consent to.

c.      Negligently and recklessly failing to timely and appropriately recognize, prior to incision, that the incorrect foot had been prepped for surgery in error.

d.      Negligently and recklessly failing to timely and appropriately recognize that wrong site/wrong side surgeries are major medical errors and are completely preventable.

e.      Negligently and recklessly failing to timely and appropriately request and ensure that the surgeon unambiguously mark the intended site of surgical incision (left foot), with Ms. Lewis awake and involved, using a one-time-use indelible marker that will remain visible following surgical prep and draping;

f.      Negligently and recklessly failing to timely and appropriately perform a thorough pre-operative record review to ensure consistency in identifying the correct surgical site, Ms. Lewis' expectations and with the surgeon's understanding of the intended procedure and site.

g.      Negligently and recklessly failing to timely and appropriately confirm the intended and correct site of surgery with Ms. Lewis and all surgical team members prior to beginning the procedure.

h.      Negligently and recklessly failing to timely and appropriately perform a surgical time-out, immediately prior to starting Ms. Lewis' procedure, to conduct a final verification of the correct procedure and site, with full participation from the all the surgical team members.

i.      Negligently and recklessly failing to timely and appropriately perform accurate, clear and effective hand-off communications that include the correct and verified procedure and site/side.

j.    Negligently and recklessly failing to refrain from distractions and/or rushing through the surgical verification process, surgical prepping/draping and/or surgical time-outs.

k.    Negligently and recklessly failing to timely formulate, implement and follow appropriate safety interventions, to prevent accidents and injuries, for a patient such as Ms. Lewis who was supposed to undergo, and consented to, a single surgery to her left foot.

l.    Negligently and recklessly failing to timely ensure that all surgical team members are aware of, following and carrying out formulated interventions.

m.    Negligently and recklessly failing to immediately notify Ms. Lewis if you were unable to meet her needs.

n.    Negligently and recklessly failing to promote, advocate and protect the health, safety and rights of a patient such as Ms. Lewis, including but not limited to, informing supervisors and others in the chain of command of the need for Ms. Lewis to receive timely and appropriate care to prevent accidents and injuries.

o.    Negligently and recklessly failing to timely provide a basis for determining and managing Ms. Lewis' progress including response to treatment, change in condition and changes in treatment, through timely, complete, accurate and organized clinical information that is readily accessible for patient care.

p.    Negligently and recklessly failing to provide an adequate number of staff in order to ensure that appropriate and accurate assessments, verifications, preparations, treatment, interventions, communications, notifications and documentation are performed in a timely manner.

q.    Negligently and recklessly failing to timely provide appropriate training for all surgical staff members, including but not limited to, RNs, LPNs and surgical scrub techs, in regard to how to appropriately and accurately prepare patients for surgery using standardized verification processes, protocols and according to the signed surgical consent.

r.    Negligently and recklessly failing to perform other actions as may be learned during discovery on this case.

42.    The Defendants Hurley Health Services, and/or City of Flint, Board of Hospital Managers d/b/a Hurley Medical Center and HMC are legally responsible for the ordinary negligence, professional negligence and malpractice of their employees, agents, and/or ostensible agents, including, but not limited to, RNs, LPNs and surgical scrub techs, under the doctrines of vicarious liability, *respondeat superior* and/or *Grewe v. Mt. Clemens General Hospital*, 404 Mich 240, 273 NW2d 429 (1978).

43.    As a further direct and proximate result of the ordinary negligence, professional negligence and malpractice of the employees, agents, and/or ostensible agents of Defendants

6

Hurley Health Services, and/or City of Flint, Board of Hospital Managers d/b/a Hurley Medical Center and HMC, including but not limited to, RNs, LPNs and surgical scrub techs, Cynthia Lewis, Esq. sustained serious and permanent injuries, including but not limited to:

    a.    Superfluous surgery to her right foot;

    b.    Two separate invasive surgeries to both of her feet on the same day;

    c.    Prolonged recovery due to the unplanned and extraneous surgery to her right foot;

    d.    Pain, anxiety, mental anguish and suffering;

    e.    Significant medical expenses;

    f.    Other injuries and damages which will be determined through the further course of discovery.

WHEREFORE, plaintiff prays for damages in whatever amount above Twenty-Five Thousand ($25,000.00) Dollars to which she is found to be entitled at the time of trial, together with interest, costs and attorney fees; wherefore, she brings this suit.

## COUNT 2
### KEITH B. DANIELS, DPM, HAMILTON COMMUNITY HEALTH NETWORK, INC D/B/A HAMILTON COMMUNITY HEALTH NETWORK, HAMILTON COMMUNITY HEALTH NETWORK, INC. D/B/A HAMILTON COMMUNITY HEALTH NETWORK-BURTON CLINIC, HURLEY HEALTH SERVICES, AND CITY OF FLINT, BOARD OF HOSPITAL MANAGERS D/B/A HURLEY MEDICAL CENTER AND HMC

    44.    Plaintiff incorporates by reference, as though fully stated herein, all of the allegations contained in the other paragraphs of this complaint.

    45.    Hamilton Community Health Network, Inc d/b/a Hamilton Community Health Network, Hamilton Community Health Network, Inc. d/b/a Hamilton Community Health Network-Burton Clinic, Hurley Health Services, and/or City of Flint, Board of Hospital Managers d/b/a Hurley Medical Center and HMC are legally responsible for the medical malpractice of Keith B. Daniels, DPM under the doctrines of vicarious liability, *respondeat superior* and/or *Grewe v. Mt. Clemens General Hospital*, 404 Mich 240, 273 NW2d 429 (1978).

    46.    It was then and there the duty of Keith B. Daniels, DPM to provide care in conformance with that of a doctor of podiatric medicine and surgery in a same or similar locality.

    47.    It was then and there the duty Keith B. Daniels, DPM to exercise due care and caution for Cynthia Lewis, Esq.

48.   Keith B. Daniels, DPM breached this duty when he performed the following acts of ordinary negligence, professional negligence and/or medical malpractice:

a.   Negligently and recklessly failing to timely and appropriately ensure that Dr. Daniels perform surgery solely on the correct and intended surgical site (left foot) and according to Ms. Lewis' signed surgical consent.

b.   Negligently and recklessly failing to refrain from performing surgery on the incorrect and unintended site (right foot) for which Ms. Lewis did not consent to.

c.   Negligently and recklessly failing to timely and appropriately recognize, prior to incision, that the incorrect foot had been prepped for surgery in error.

d.   Negligently and recklessly failing to timely and appropriately recognize that wrong site/wrong side surgeries are major medical errors and are completely preventable.

e.   Negligently and recklessly failing to timely, appropriately and unambiguously mark the intended site of surgical incision (left foot), with Ms. Lewis awake and involved, using a one-time-use indelible marker that will remain visible following surgical prep and draping.

f.   Negligently and recklessly failing to timely and appropriately perform a thorough pre-operative record review to ensure consistency in identifying the correct surgical site, Ms. Lewis' expectations and with the surgical team's understanding of the intended procedure and site.

g.   Negligently and recklessly failing to timely and appropriately confirm the intended and correct site of surgery with Ms. Lewis and all surgical team members prior to beginning the procedure.

h.   Negligently and recklessly failing to timely and appropriately perform a surgical time-out, immediately prior to starting Ms. Lewis' procedure, to conduct a final verification of the correct procedure and site, with full participation from the all the surgical team members.

i.   Negligently and recklessly failing to timely and appropriately recognize that as the surgeon you are ultimately accountable for ensuring surgery is performed on the correct and intended site and according to signed surgical consent.

j.   Negligently and recklessly failing to refrain from excessive reliance on surgical team members to identify and ensure that the procedure to be performed was on the intended and correct site/side.

k.   Negligently and recklessly failing to refrain from distractions and/or rushing through the surgical verification process, surgical prepping/draping and/or surgical time-outs.

8

l.   Negligently and recklessly failing to timely formulate, implement and follow appropriate safety interventions, to prevent accidents and injuries, for a patient such as Ms. Lewis who was supposed to undergo, and consented to, a single surgery to her left foot.

m.   Negligently and recklessly failing to timely ensure that all surgical team members are aware of, following and carrying out formulated interventions.

n.   Negligently and recklessly failing to immediately notify Ms. Lewis if you were unable to meet her needs.

o.   Negligently and recklessly failing to promote, advocate and protect the health, safety and rights of a patient such as Ms. Lewis, including but not limited to, informing supervisors and others in the chain of command of the need for Ms. Lewis to receive timely and appropriate care to prevent accidents and injuries.

p.   Negligently and recklessly failing to timely provide a basis for determining and managing Ms. Lewis' progress including response to treatment, change in condition and changes in treatment, through timely, complete, accurate and organized clinical information that is readily accessible for patient care.

q.   Negligently and recklessly failing to provide an adequate number of staff in order to ensure that appropriate and accurate assessments, verifications, preparations, treatment, interventions, notifications and documentation are performed in a timely manner.

r.   Negligently and recklessly failing to timely provide appropriate supervision and oversight of all care and treatment provided to Ms. Lewis by the surgical staff members.

s.   Negligently and recklessly failing to timely provide appropriate training for all surgical staff members, including but not limited to, RNs, LPNs and surgical scrub techs, in regard to how to appropriately and accurately prepare patients for surgery using standardized verification processes, protocols and according to the signed surgical consent.

t.   Negligently and recklessly failing to perform other actions as may be learned during discovery on this case.

49.   As a direct and proximate result of the ordinary negligence, professional negligence and malpractice of Keith B. Daniels, DPM, Cynthia Lewis, Esq. sustained serious and permanent injuries, including but not limited to:

a.   Superfluous surgery to her right foot;

b.   Two separate invasive surgeries to both of her feet on the same day;

9

c.    Prolonged recovery due to the unplanned and extraneous surgery to her right foot;

d.    Pain, anxiety, mental anguish and suffering;

e.    Significant medical expenses;

f.    Other injuries and damages which will be determined through the further course of discovery.

WHEREFORE, plaintiff prays for damages in whatever amount above Twenty-Five Thousand ($25,000.00) Dollars to which she is found to be entitled at the time of trial, together with interest, costs and attorney fees; wherefore, she brings this suit.

OLSMAN MACKENZIE PEACOCK & WALLACE, P.C.

*Emily M. Peacock*

Emily M. Peacock (P64410)
Attorneys for Plaintiff
2684 West Eleven Mile Road
Berkley, MI 48072
248-591-2300 / (248) 591-2304 [fax]

Dated: March 13, 2020

10

STATE OF MICHIGAN

IN THE CIRCUIT COURT FOR THE COUNTY OF GENESEE

CYNTHIA LEWIS, ESQ.

    Plaintiff,

v

HURLEY HEALTH SERVICES; CITY OF
FLINT, BOARD OF HOSPITAL MANAGERS d/b/a
Hurley Medical Center and HMC;
KEITH B. DANIELS, DPM; HAMILTON
COMMUNITY HEALTH NETWORK, INC
d/b/a Hamilton Community Health Network
d/b/a Hamilton Community Health Network
- Burton Medical Clinic

    Defendants, Jointly and Severally,

20-114071 NH

No. 20-

Hon.

JOSEPH J. FARAH
P-30439



A TRUE COPY
Genesee County Clerk

EMILY M. PEACOCK (P64410)
OLSMAN MACKENZIE PEACOCK
& WALLACE, P.C.
Attorneys for Plaintiff
2684 West Eleven Mile Road
Berkley, MI 48072
248-591-2300 / 248-591-2304 [fax]

## JURY DEMAND

    NOW COMES the plaintiff Cynthia Lewis, Esq. by and through her attorneys OLSMAN
MACKENZIE PEACOCK & WALLACE, PC, and hereby demands a Trial by Jury in the above
entitled matter.

OLSMAN MACKENZIE PEACOCK &
WALLACE, P.C.

*Emily M. Peacock*

Emily M. Peacock (P64410)
Attorneys for Plaintiff
2684 West Eleven Mile Road
Berkley, MI 48072
248-591-2300 / (248) 591-2304 [fax]

Dated: March 13, 2020

### AFFIDAVIT OF MERIT
### OF R. RANDAL AARANSON, DPM

STATE OF MISSOURI     )
                   )ss.
COUNTY OF SAINT LOUIS     )

I certify that I have reviewed the Notice of Intent to File a Claim pursuant to MCLA 600.2912(b), MSA 27A.2912(2), and all medical records supplied to me by Plaintiff's attorneys with regard to Ms. Cynthia Lewis, Esq. concerning the allegations contained in the Notice.  I further certify that during the year immediately preceding the date of the occurrence that is the basis for this claim, I devoted a majority of my professional time to the active clinical practice of podiatric medicine and surgery and/or the instruction of students in an accredited health professional school or clinical research program in podiatric medicine and surgery.  I also state the following:

A.    __The Applicable Standard of Practice or Care__

The standard of care applicable to Keith B. Daniels, DPM, is that of the skill and care ordinarily possessed by and exercised by doctors of podiatric medicine and surgery in a same or similar locality.

At a minimum, the standard practice or care required Keith B. Daniels, DPM, to:

- Timely and appropriately ensure that Dr. Daniels perform surgery solely on the correct and intended surgical site (left foot) and according to Ms. Lewis' signed surgical consent.

- Refrain from performing surgery on the incorrect and unintended site (right foot) for which Ms. Lewis did not consent to.

- Timely and appropriately recognize, prior to incision, that the incorrect foot had been prepped for surgery in error.

- Timely and appropriately recognize that wrong site/wrong side surgeries are

1

major medical errors and are completely preventable.

- Timely, appropriately and unambiguously mark the intended site of surgical incision (left foot), with Ms. Lewis awake and involved, using a one-time-use indelible marker that will remain visible following surgical prep and draping.

- Timely and appropriately perform a thorough pre-operative record review to ensure consistency in identifying the correct surgical site, Ms. Lewis' expectations and with the surgical team's understanding of the intended procedure and site.

- Timely and appropriately confirm the intended and correct site of surgery with Ms. Lewis and all surgical team members prior to beginning the procedure.

- Timely and appropriately perform a surgical time-out, immediately prior to starting Ms. Lewis' procedure, to conduct a final verification of the correct procedure and site, with full participation from the all the surgical team members.

- Timely and appropriately recognize that as the surgeon you are ultimately accountable for ensuring surgery is performed on the correct and intended site and according to signed surgical consent.

- Refrain from excessive reliance on surgical team members to identify and ensure that the procedure to be performed was on the intended and correct site/side.

- Refrain from distractions and/or rushing through the surgical verification process, surgical prepping/draping and/or surgical time-outs.

- Timely formulate, implement and follow appropriate safety interventions, to prevent accidents and injuries, for a patient such as Ms. Lewis who was supposed to undergo, and consented to, a single surgery to her left foot.

- Timely ensure that all surgical team members are aware of, following and carrying out formulated interventions.

- Immediately notify Ms. Lewis if you were unable to meet her needs.

- Promote, advocate and protect the health, safety and rights of a patient such as Ms. Lewis, including but not limited to, informing supervisors and others in the chain of command of the need for Ms. Lewis to receive timely and appropriate care to prevent accidents and injuries.

2

- Timely provide a basis for determining and managing Ms. Lewis' progress including response to treatment, change in condition and changes in treatment, through timely, complete, accurate and organized clinical information that is readily accessible for patient care.

- Provide an adequate number of staff in order to ensure that appropriate and accurate assessments, verifications, preparations, treatment, interventions, notifications and documentation are performed in a timely manner.

- Timely provide appropriate supervision and oversight of all care and treatment provided to Ms. Lewis by the surgical staff members.

- Timely provide appropriate training for all surgical staff members, including but not limited to, RNs, LPNs and surgical scrub techs, in regard to how to appropriately and accurately prepare patients for surgery using standardized verification processes, protocols and according to the signed surgical consent.

- Perform other actions as may be learned during discovery on this case.

**B.**     **The Applicable Standard of Practice or Care Was Breached**

Keith B. Daniels, DPM, breached the applicable standard of practice or care when he failed to:

- Timely and appropriately ensure that Dr. Daniels perform surgery solely on the correct and intended surgical site (left foot) and according to Ms. Lewis' signed surgical consent.

- Refrain from performing surgery on the incorrect and unintended site (right foot) for which Ms. Lewis did not consent to.

- Timely and appropriately recognize, prior to incision, that the incorrect foot had been prepped for surgery in error.

- Timely and appropriately recognize that wrong site/wrong side surgeries are major medical errors and are completely preventable.

- Timely, appropriately and unambiguously mark the intended site of surgical incision (left foot), with Ms. Lewis awake and involved, using a one-time-use indelible marker that will remain visible following surgical prep and draping.

3

- Timely and appropriately perform a thorough pre-operative record review to ensure consistency in identifying the correct surgical site, Ms. Lewis' expectations and with the surgical team's understanding of the intended procedure and site.

- Timely and appropriately confirm the intended and correct site of surgery with Ms. Lewis and all surgical team members prior to beginning the procedure.

- Timely and appropriately perform a surgical time-out, immediately prior to starting Ms. Lewis' procedure, to conduct a final verification of the correct procedure and site, with full participation from the all the surgical team members.

- Timely and appropriately recognize that as the surgeon you are ultimately accountable for ensuring surgery is performed on the correct and intended site and according to signed surgical consent.

- Refrain from excessive reliance on surgical team members to identify and ensure that the procedure to be performed was on the intended and correct site/side.

- Refrain from distractions and/or rushing through the surgical verification process, surgical prepping/draping and/or surgical time-outs.

- Timely formulate, implement and follow appropriate safety interventions, to prevent accidents and injuries, for a patient such as Ms. Lewis who was supposed to undergo, and consented to, a single surgery to her left foot.

- Timely ensure that all surgical team members are aware of, following and carrying out formulated interventions.

- Immediately notify Ms. Lewis if you were unable to meet her needs.

- Promote, advocate and protect the health, safety and rights of a patient such as Ms. Lewis, including but not limited to, informing supervisors and others in the chain of command of the need for Ms. Lewis to receive timely and appropriate care to prevent accidents and injuries.

- Timely provide a basis for determining and managing Ms. Lewis' progress including response to treatment, change in condition and changes in treatment, through timely, complete, accurate and organized clinical information that is readily accessible for patient care.

4

- Provide an adequate number of staff in order to ensure that appropriate and accurate assessments, verifications, preparations, treatment, interventions, notifications and documentation are performed in a timely manner.

- Timely provide appropriate supervision and oversight of all care and treatment provided to Ms. Lewis by the surgical staff members.

- Timely provide appropriate training for all surgical staff members, including but not limited to, RNs, LPNs and surgical scrub techs, in regard to how to appropriately and accurately prepare patients for surgery using standardized verification processes, protocols and according to the signed surgical consent.

- Perform other actions as may be learned during discovery on this case.

**C.**   **The Actions that Should Have Been Taken or Omitted in Order to have Complied With the Applicable Standard of Practice or Care**

At a minimum, in order to have achieved compliance with the applicable standard of practice or care, Keith B. Daniels, DPM, should have:

- Timely and appropriately ensured that Dr. Daniels performed surgery solely on the correct and intended surgical site (left foot) and according to Ms. Lewis' signed surgical consent.

- Refrained from performing surgery on the incorrect and unintended site (right foot) for which Ms. Lewis did not consent to.

- Timely and appropriately recognized, prior to incision, that the incorrect foot had been prepped for surgery in error.

- Timely and appropriately recognized that wrong site/wrong side surgeries are major medical errors and are completely preventable.

- Timely, appropriately and unambiguously marked the intended site of surgical incision (left foot), with Ms. Lewis awake and involved, using a one-time-use indelible marker that will remain visible following surgical prep and draping.

- Timely and appropriately performed a thorough pre-operative record review to ensure consistency in identifying the correct surgical site, Ms. Lewis' expectations and with the surgical team's understanding of the intended procedure and site.

5

- Timely and appropriately confirmed the intended and correct site of surgery with Ms. Lewis and all surgical team members prior to beginning the procedure.

- Timely and appropriately performed a surgical time-out, immediately prior to starting Ms. Lewis' procedure, to conduct a final verification of the correct procedure and site, with full participation from the all the surgical team members.

- Timely and appropriately recognized that as the surgeon you are ultimately accountable for ensuring surgery is performed on the correct and intended site and according to signed surgical consent.

- Refrained from excessive reliance on surgical team members to identify and ensure that the procedure to be performed was on the intended and correct site/side.

- Refrained from distractions and/or rushing through the surgical verification process, surgical prepping/draping and/or surgical time-outs.

- Timely formulated, implemented and followed appropriate safety interventions, to prevent accidents and injuries, for a patient such as Ms. Lewis who was supposed to undergo, and consented to, a single surgery to her left foot.

- Timely ensured that all surgical team members are aware of, following and carrying out formulated interventions.

- Immediately notified Ms. Lewis if you were unable to meet her needs.

- Promoted, advocated and protected the health, safety and rights of a patient such as Ms. Lewis, including but not limited to, informing supervisors and others in the chain of command of the need for Ms. Lewis to receive timely and appropriate care to prevent accidents and injuries.

- Timely provided a basis for determining and managing Ms. Lewis' progress including response to treatment, change in condition and changes in treatment, through timely, complete, accurate and organized clinical information that is readily accessible for patient care.

- Provided an adequate number of staff in order to ensure that appropriate and accurate assessments, verifications, preparations, treatment, interventions, notifications and documentation are performed in a timely manner.

6

- Timely provided appropriate supervision and oversight of all care and treatment provided to Ms. Lewis by the surgical staff members.

- Timely provided appropriate training for all surgical staff members, including but not limited to, RNs, LPNs and surgical scrub techs, in regard to how to appropriately and accurately prepare patients for surgery using standardized verification processes, protocols and according to the signed surgical consent.

- Performed other actions as may be learned during discovery on this case.

**D.**    **The Manner in Which the Breach of the Standard of Practice or Care was a Proximate Cause of the Injury Alleged**

The above breaches in the standard of care by Keith B. Daniels, DPM, were the proximate cause of Ms. Lewis being subject to a major surgical error. The failure to provide adequate time, attention and detail in the surgical verification process caused harm to Ms. Lewis and resulted in her undergoing a superfluous surgery to her right foot. Once the error was discovered, after completion of the procedure, Ms. Lewis was taken back to the operating room for surgery to her left foot, the intended site she consented to. This resulted in Ms. Lewis undergoing two separate invasive surgeries to both of her feet on the same day – something she was not mentally or physically prepared for. The devastating experience had a negative impact on Ms. Lewis' recovery, which was prolonged due to the unplanned and extraneous surgery to her right foot. As a result of the significant surgical error, Ms. Lewis endured severe pain, anxiety, mental anguish and suffering. Ms. Lewis was further caused to expend and/or have expended on her behalf by sources of health care insurance large sums of money for medical and hospital care and treatment for which she is legally obligated as a result of claims of subrogation and liens.

_R. Randal Aaranson_

R. RANDAL AARANSON, DPM

Subscribed and sworn to before me
this  2  day of  March  20 20

_Angela Poinsett_
Notary Public
County of  St Charles
State of  Missouri
My commission expires  7/18/2023

ANGELA POINSETT
Notary Public - Notary Seal
St Charles County - State of Missouri
Commission Number 15133613
My Commission Expires Jul 18, 2023

7

## AFFIDAVIT OF MERIT
## OF MARY FLANAGAN, R.N.

STATE OF ILLINOIS       )
                      )ss.
COUNTY OF COOK )

I certify that I have reviewed the Notice of Intent to File a Claim pursuant to MCLA 600.2912(b), MSA 27A.2912(2), and all medical records supplied to me by Plaintiff's attorneys with regard to Ms. Cynthia Lewis concerning the allegations contained in the Notice. I further certify that during the year immediately preceding the date of the occurrence that is the basis for this claim, I devoted a majority of my professional time to the active clinical practice of nursing and/or the instruction of students in an accredited health professional school or clinical research program in nursing. I also state the following:

### A.    The Applicable Standard of Practice or Care

The standard of care applicable to the surgical staff members at Hurley Health Services, and/or City of Flint, Board of Hospital Managers d/b/a Hurley Medical Center and HMC, by and through their agents, assigns, representatives and employees, including but not limited to RNs, LPNs and surgical scrub techs, is the skill and care ordinarily possessed and exercised by practitioners of their profession in the same or similar localities.

At a minimum, Hurley Health Services, and/or City of Flint, Board of Hospital Managers d/b/a Hurley Medical Center and HMC, by and through their agents, assigns, representatives and employees, including but not limited to RNs, LPNs and surgical scrub techs, had a duty to:

1. Timely and appropriately ensure that surgery was performed solely on the correct and intended surgical site (left foot) and according to Ms. Lewis' signed surgical consent.

2. Refrain from allowing surgery on the incorrect and unintended site (right foot) for which Ms. Lewis did not consent to.

3.     Timely and appropriately recognize, prior to incision, that the incorrect foot had been prepped for surgery in error.

4.     Timely and appropriately recognize that wrong site/wrong side surgeries are major medical errors and are completely preventable.

5.     Timely and appropriately request and ensure that the surgeon unambiguously mark the intended site of surgical incision (left foot), with Ms. Lewis awake and involved, using a one-time-use indelible marker that will remain visible following surgical prep and draping.

6.     Timely and appropriately perform a thorough pre-operative record review to ensure consistency in identifying the correct surgical site, Ms. Lewis' expectations and with the surgeon's understanding of the intended procedure and site.

7.     Timely and appropriately confirm the intended and correct site of surgery with Ms. Lewis and all surgical team members prior to beginning the procedure.

8.     Timely and appropriately perform a surgical time-out, immediately prior to starting Ms. Lewis' procedure, to conduct a final verification of the correct procedure and site, with full participation from the all the surgical team members.

9.     Timely and appropriately perform accurate, clear and effective hand-off communications that include the correct and verified procedure and site/side.

10.     Refrain from distractions and/or rushing through the surgical verification process, surgical prepping/draping and/or surgical time-outs.

11.     Timely formulate, implement and follow appropriate safety interventions, to prevent accidents and injuries, for a patient such as Ms. Lewis who was supposed to undergo, and consented to, a single surgery to her left foot.

12.     Timely ensure that all surgical team members are aware of, following and carrying out formulated interventions.

13.     Immediately notify Ms. Lewis if you were unable to meet her needs.

14.     Promote, advocate and protect the health, safety and rights of a patient such as Ms. Lewis, including but not limited to, informing supervisors and others in the chain of command of the need for Ms. Lewis to receive timely and appropriate care to prevent accidents and injuries.

15. Timely provide a basis for determining and managing Ms. Lewis' progress including response to treatment, change in condition and changes in treatment, through timely, complete, accurate and organized clinical information that is readily accessible for patient care.

16. Provide an adequate number of staff in order to ensure that appropriate and accurate assessments, verifications, preparations, treatment, interventions, communications, notifications and documentation are performed in a timely manner.

17. Timely provide appropriate training for all surgical staff members, including but not limited to, RNs, LPNs and surgical scrub techs, in regard to how to appropriately and accurately prepare patients for surgery using standardized verification processes, protocols and according to the signed surgical consent.

18. Perform other actions as may be learned during discovery on this case.

**B.    The Applicable Standard of Practice or Care Was Breached**

Hurley Health Services, and/or City of Flint, Board of Hospital Managers d/b/a Hurley Medical Center and HMC, by and through their agents, assigns, representatives and employees, including but not limited to, surgical staff members, including but not limited to, RNs, LPNs and surgical scrub techs, failed to:

1. Timely and appropriately ensure that surgery was performed solely on the correct and intended surgical site (left foot) and according to Ms. Lewis' signed surgical consent.

2. Refrain from allowing surgery on the incorrect and unintended site (right foot) for which Ms. Lewis did not consent to.

3. Timely and appropriately recognize, prior to incision, that the incorrect foot had been prepped for surgery in error.

4. Timely and appropriately recognize that wrong site/wrong side surgeries are major medical errors and are completely preventable.

5. Timely and appropriately request and ensure that the surgeon unambiguously mark the intended site of surgical incision (left foot), with Ms. Lewis awake and involved, using a one-time-use indelible marker that will remain visible following surgical prep and draping.

6. Timely and appropriately perform a thorough pre-operative record review to ensure consistency in identifying the correct surgical site, Ms. Lewis' expectations and with the surgeon's understanding of the intended procedure and site.

3

7.     Timely and appropriately confirm the intended and correct site of surgery with Ms. Lewis and all surgical team members prior to beginning the procedure.

8.     Timely and appropriately perform a surgical time-out, immediately prior to starting Ms. Lewis' procedure, to conduct a final verification of the correct procedure and site, with full participation from the all the surgical team members.

9.     Timely and appropriately perform accurate, clear and effective hand-off communications that include the correct and verified procedure and site/side.

10.    Refrain from distractions and/or rushing through the surgical verification process, surgical prepping/draping and/or surgical time-outs.

11.    Timely formulate, implement and follow appropriate safety interventions, to prevent accidents and injuries, for a patient such as Ms. Lewis who was supposed to undergo, and consented to, a single surgery to her left foot.

12.    Timely ensure that all surgical team members are aware of, following and carrying out formulated interventions.

13.    Immediately notify Ms. Lewis if you were unable to meet her needs.

14.    Promote, advocate and protect the health, safety and rights of a patient such as Ms. Lewis, including but not limited to, informing supervisors and others in the chain of command of the need for Ms. Lewis to receive timely and appropriate care to prevent accidents and injuries.

15.    Timely provide a basis for determining and managing Ms. Lewis' progress including response to treatment, change in condition and changes in treatment, through timely, complete, accurate and organized clinical information that is readily accessible for patient care.

16.    Provide an adequate number of staff in order to ensure that appropriate and accurate assessments, verifications, preparations, treatment, interventions, communications, notifications and documentation are performed in a timely manner.

17.    Timely provide appropriate training for all surgical staff members, including but not limited to, RNs, LPNs and surgical scrub techs, in regard to how to appropriately and accurately prepare patients for surgery using standardized verification processes, protocols and according to the signed surgical consent.

18.    Perform other actions as may be learned during discovery on this case.

4

**C.**    **The Actions that Should Have Been Taken or Omitted in Order to have Complied With the Applicable Standard of Practice or Care**

At a minimum, Hurley Health Services, and/or City of Flint, Board of Hospital Managers d/b/a Hurley Medical Center and HMC, by and through their agents, assigns, representatives and employees, including but not limited to, surgical staff members, including but not limited to, RNs, LPNs and surgical scrub techs, should have:

1. Timely and appropriately ensured that surgery was performed solely on the correct and intended surgical site (left foot) and according to Ms. Lewis' signed surgical consent.

2. Refrained from allowing surgery on the incorrect and unintended site (right foot) for which Ms. Lewis did not consent to.

3. Timely and appropriately recognized, prior to incision, that the incorrect foot had been prepped for surgery in error.

4. Timely and appropriately recognized that wrong site/wrong side surgeries are major medical errors and are completely preventable.

5. Timely and appropriately requested and ensured that the surgeon unambiguously mark the intended site of surgical incision (left foot), with Ms. Lewis awake and involved, using a one-time-use indelible marker that will remain visible following surgical prep and draping.

6. Timely and appropriately performed a thorough pre-operative record review to ensure consistency in identifying the correct surgical site, Ms. Lewis' expectations and with the surgeon's understanding of the intended procedure and site.

7. Timely and appropriately confirmed the intended and correct site of surgery with Ms. Lewis and all surgical team members prior to beginning the procedure.

8. Timely and appropriately performed a surgical time-out, immediately prior to starting Ms. Lewis' procedure, to conduct a final verification of the correct procedure and site, with full participation from the all the surgical team members.

9. Timely and appropriately performed accurate, clear and effective hand-off communications that include the correct and verified procedure and site/side.

10. Refrained from distractions and/or rushing through the surgical verification process, surgical prepping/draping and/or surgical time-outs.

11. Timely formulated, implemented and followed appropriate safety interventions, to prevent accidents and injuries, for a patient such as Ms. Lewis who was supposed to undergo, and consented to, a single surgery to her left foot.

12. Timely ensured that all surgical team members are aware of, following and carrying out formulated interventions.

13. Immediately notified Ms. Lewis if you were unable to meet her needs.

14. Promoted, advocated and protected the health, safety and rights of a patient such as Ms. Lewis, including but not limited to, informing supervisors and others in the chain of command of the need for Ms. Lewis to receive timely and appropriate care to prevent accidents and injuries.

15. Timely provided a basis for determining and managing Ms. Lewis' progress including response to treatment, change in condition and changes in treatment, through timely, complete, accurate and organized clinical information that is readily accessible for patient care.

16. Provided an adequate number of staff in order to ensure that appropriate and accurate assessments, verifications, preparations, treatment, interventions, communications, notifications and documentation are performed in a timely manner.

17. Timely provided appropriate training for all surgical staff members, including but not limited to, RNs, LPNs and surgical scrub techs, in regard to how to appropriately and accurately prepare patients for surgery using standardized verification processes, protocols and according to the signed surgical consent.

18. Performed other actions as may be learned during discovery on this case.

**D.** **The Manner in Which the Breach of the Standard of Practice or Care was a Proximate Cause of the Injury Alleged**

The above breaches in the standard of care by the surgical staff members, including but not limited to, RNs, LPNs and surgical scrub techs, at Hurley Health Services, and/or City of Flint, Board of Hospital Managers d/b/a Hurley Medical Center and HMC were the proximate cause of Ms. Lewis being subject to a major surgical error. The failure to provide adequate time, attention and detail in the surgical verification process caused harm to Ms. Lewis and resulted in her undergoing a superfluous surgery to her right foot. Once the error was discovered, after completion of the procedure, Ms. Lewis was taken back to the operating room for surgery to her left foot, the intended site she consented to. This resulted in Ms. Lewis undergoing two separate invasive surgeries to both of her feet on the same day – something she was not mentally or physically prepared for. The devastating experience had a negative impact on Ms. Lewis' recovery, which was prolonged due to the unplanned and extraneous surgery to her right foot. As a result of the significant surgical error, Ms. Lewis endured severe pain, anxiety, mental anguish and suffering. Ms. Lewis was further caused to expend and/or have expended on her behalf by

sources of health care insurance large sums of money for medical and hospital care and treatment for which she is legally obligated as a result of claims of subrogation and liens.

MARY FLANAGAN, R.N.

Subscribed and sworn to before me
this _9th_ day of _March_ 20_20_

Notary Public
County of _Cook_
State of _Illinois_
My commission expires _08/04/2022_

"OFFICIAL SEAL"
LAWRENCE D. DICKMAN
Notary Public, State of Illinois
My Commission Expires 8/4/2022

7